CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KYLE ALLEN HULBERT,                    )
      Plaintiff,                            )          Civil Action No. 7:24-cv-00358
                                  )
v.                                                          )
                                  )          By: Elizabeth K. Dillon
WENDY BROWN, *et al.*,                 )          Chief United States District Judge
      Defendants.                         )

**MEMORANDUM OPINION**

Kyle Allen Hulbert, a Virginia inmate acting *pro se*, brought this 42 U.S.C. § 1983 action against Wendy Brown and Paul Rice, alleging violations of his First Amendment rights to access certain reading materials.  Hulbert has filed an amended complaint and six pages of exhibits. (Dkt. Nos. 32, 32-1,[1] 32-2.)  Defendants move to dismiss the amended complaint for failure to state a claim.  (Dkt. No. 34.)  Hulbert responded to this motion.  (Dkt. Nos. 40, 40-1.)

For the reasons stated below, the court will grant defendants' motion to dismiss as to Hulbert's claim for money damages against defendants in their official capacities.  It will otherwise deny the motion.

I.  BACKGROUND

The allegations relevant to this lawsuit, accepted as true for purposes of defendants' motion to dismiss, are as follows.

Hulbert was confined at River North Correctional Center during the events giving rise to the allegations in his amended complaint.  Hulbert alleges that his First Amendment rights were violated when the book *Full Dark, No Stars* by Stephen King was placed on the Disapproved Publication List, preventing Hulbert from receiving it.  Wendy Brown and Paul Rice are

---

[1]  The form complaint (Dkt. No. 32) references the attached "memorandum of law" (Dkt. No. 32-1) which the court considers to be part of the amended complaint.

members of the Virginia Department of Corrections Publication Review Committee.  (Dkt. No. 32-1, Am. Compl. ¶¶ 4–5.)  Brown and Rice were substituted as defendants in this matter for the VDOC Publication Review Committee based upon Hulbert's representation that *Full Dark, No Stars* was placed on the disapproved list in August 2021.  (Dkt. Nos. 13, 16.)  Defendants, along with a third now-deceased member, were the members of the Committee during that month. (Dkt. No. 13, at 1 n.1.)  Members of the committee review publications to determine if they violate Operating Procedure 803.2, Incoming Publications, and are thus not appropriate for possession by an inmate.  (Am. Compl. ¶¶ 4–5.)

On February 23, 2024, Hulbert was informed by property officer Felts that *Full Dark, No Stars*, which had been sent to Hulbert, was disapproved.  (*Id.* ¶ 7.)  Hulbert initiated a grievance, contending that the River North mailroom did not provide him with the appropriate paperwork in accordance with Operating Procedure 803.2.  He noted that it was the second time in sixty days that mailroom personnel had violated the policy.  Assistant Warden Bateman ruled that Hulbert's grievance about not receiving the correct paperwork was resolvable.  (*Id.* ¶¶ 8–10, Ex. B.) However, with respect to the book's disapproval, a publication that has been disapproved is not subject to appeal through the Offender Grievance Procedure, so Hulbert could not grieve the issue.  (*Id.* ¶ 11.)

Hulbert determined that the book was disapproved for a total of six pages that violated criteria B[2] and D[3] of Operating Procedure 803.2.  (*Id.* ¶ 12.)  Hulbert contends that because the

---

[2]  Criterion B of OP 803.2 prohibits "[m]aterial that contains solicitations for or promotes activities that are in violation of state or federal law including the abuse or sexual exploitation of children or contains nude depictions of children in the context of sexual activity."  (Am. Compl. ¶ 13.)

[3]  Criterion D of OP 803.2 bars "[m]aterial, documents, or photographs that emphasize depictions or promotions of violence, disorder, insurrection, terrorist, or criminal activity in violation of state or federal law or the violation of the offender disciplinary procedure.  Note: This criterion will not be used to exclude publications that describe such acts in the context of a story or moral teaching unless the description of such acts is the primary

six flagged pages comprise .016 percent of *Full Dark, No Stars*, their content "cannot by any reasonable metric be considered to be the primary purpose of the book; therefore, it should not be disapproved." (*Id.* ¶ 15.)  Having read the book in the past, Hulbert alleges that the reason for it being disapproved is due to a passage in the book about a newspaper article reporting that a child had been murdered when he walked in on his mother being killed.  There is no description of the child's death nor any indication that the child was sexually molested.  (*Id.* ¶ 16.)  Hulbert alleges that this single paragraph does not satisfy the standard for being solicitous or promoting abuse or exploitation of children as described in Criterion B.  (*Id.* ¶ 17.)  Hulbert further asserts that *Full Dark, No Stars* has literary value, Criteria B and D are inappropriate reasons for its disapproval, and its disapproval by the Publication Review Committee is an exaggerated response to a legitimate penological need.  (*Id.* ¶ 18.)  According to Hulbert, defendants know that the book does not qualify for disapproval, and they did not properly evaluate the book.  Instead, they merely rubberstamped the ruling of the institution that originally denied the book.  (*Id.* ¶¶ 21–22.)

Hulbert alleges that the defendants violated his First Amendment rights by placing *Full Dark, No Stars* on the Disapproved Publication List and preventing him from receiving it.  (*Id.* ¶¶ 23–26.)  Hulbert requests injunctive relief ordering defendants to remove the book from the list, compensatory damages, and punitive damages.  (*Id.* ¶¶ 28–30.)

Included with the amended complaint are flagged passages from the book.  (Dkt. No. 32-2, Ex. D, E.)[4]  The passages involve discussion of sexual assault and crimes of a serial killer.  As

purpose of the publication.  No publication generally recognized as having literary value should be excluded under this criterion."  (Am. Compl. ¶ 14.)

[4]  The passages are not copies directly from the publication; they are hand-written.  They were sent directly by Hulbert.  (Dkt. No. 32, at 14 (envelope showing Hulbert's return address and that it was mailed from his correctional facility).  Assuming the content is accurate, neither party explains how Hulbert came into possession of the exact wording of the banned passages.

summarized by defendants, these include "a woman waking up while she is being raped, realizing she has been beaten, and having trouble breathing; a woman who was strangled, bitten, and sexually molested by the antagonist in the book; a woman discovered by her husband in her cellar whose head had been stuffed into a bin of sweet corn—she was found naked with her hands bound behind her back, and with bite marks on her buttocks and thighs; the general rape, torture, and sexual molestation of murder victims; and the murder of a ten-year old boy after he walked in on his mother being slain by a serial killer." (*See id.*; Mem. Supp. Mot. Dismiss 5–6, Dkt. No. 35.)  The actual passages cited, while not lengthy, are more graphic and descriptive than the more sanitized summaries in the preceding paragraph.  (*See* ECF No. 32-2, Exs. D, E; Mem. Supp. Mot. Dismiss 5–6, nn. 1–5.)

Defendants seek dismissal on a number of grounds.  The bulk of their motion is devoted to a discussion of why Hulbert fails to assert a valid First Amendment claim.  (Mem. Supp. Mot. Dismiss 10–15, Dkt. No. 35.)  And it argues that a VDOC official's failure to follow an operating procedure does not equate to a constitutional violation.  (*Id.* at 15–16.)  Defendants also contend that the amended complaint must be dismissed because it fails to allege sufficient personal involvement by either of them, omitting any connection between either defendant and the disapproval of the book.  (Mem. Supp. Mot. Dismiss 9–10.)  They further argue for the dismissal of various types of relief, contending that: (1) declaratory judgment is improper; (2) Hulbert is not entitled to a preliminary or permanent injunction; and (3) Hulbert may not obtain money damages against the defendants in their official capacities.  (*Id.* at 16–21.)

## II.  ANALYSIS

### A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's

4

legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by pro se litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## B. First Amendment Claim

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. 1. And "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). At the same time, the Supreme Court recognized in *Turner* that certain constitutional rights are "'inconsistent' with proper incarceration." *Lumumba v. Kiser*, 116 F.4th 269, 278 (4th Cir. 2024) (quoting *Turner*, 482 U.S. at 95). "'This is because certain privileges and rights must necessarily be limited in the prison context' in order to ensure prison and prisoner safety and

5

security." *Id.* (quoting *Johnson v. California*, 543 U.S. 499, 510 (2005)). "For such rights, prison administrators deserve great deference to act in the best interest of their institutions." *Id.* (citing *Turner*, 482 U.S. at 84–85). Thus, the Court in *Turner* established that when a prisoner claims that a prison practice or regulation is invalid because it impinges on his constitutional rights, "he prevails only if he shows the prison's policy is not 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89. Claims involving First Amendment rights fall within the "ambit" of *Turner*. *Lumumba*, 116 F.4th at 279 (citing *Johnson*, 543 U.S. at 510); *see also Reynolds v. Fed. Bureau of Prisons*, Case No. 5:20-cv-00753, 2022 WL 19548487, at *14 (S.D.W. Va. Dec. 20, 2022) (collecting cases applying *Turner* to First Amendment claims involving a prison's rejection of books or publications).

The *Turner* framework applies not just to facial challenges to a policy, but also to as-applied challenges, which Hulbert appears to be making here. Indeed, the court does not construe Hulbert to be challenging the policy itself, but only its application to *Full Dark, No Stars*. To address an as-applied challenge, the court considers whether a ban on the particular item sought by the plaintiff is reasonably related to a legitimate penological objective. *E.g.*, *Murchison v. Rogers*, 779 F.3d 882, 890 (8th Cir. 2015) (explaining that an as-applied challenge asks "whether a ban *on these particular items* is reasonably related to a legitimate penological objective") (citation omitted) (emphasis added by *Murchison*); *Tory v. Davis*, No. 7:18CV00393, 2024 WL 3331668, at *5 (W.D. Va. July 8, 2024) (citing *Murchison* in evaluating an as-applied challenge).

Courts consider four factors to determine if a prison policy or its applicability in a particular circumstance satisfies *Turner*:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to

justify it;

(2) whether there are alternative means of exercising the right that remain open to prison inmates;

(3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

(4) whether there are ready alternatives.

*Firewalker-Fields v. Lee*, 58 F.4th 104, 115 (4th Cir. 2023); *see also Turner*, 482 U.S. at 89–91. Courts afford substantial deference to the judgment of prison officials, especially under the third factor. *Id.* at 115. "The burden is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015). As defendants acknowledge, however, an action which is "unreasonable or arbitrary under the first factor is unconstitutional regardless of the other components." (Defs.' Mem. Support Mot. Dismiss 12 (citations omitted).)

The Fourth Circuit has clarified that the defendants must identify the basis for a challenged policy at the pleading stage; a court may not conjure reasons for them. *Hammock v. Watts*, 146 F.4th 349, 366 (4th Cir. 2025). In their motion to dismiss, defendants explain that a restriction on a publication

> which includes discussion of rape, other types of sexual assault, child murder, strangulation, and torture is reasonably related to promoting the health, safety, and welfare of VDOC prisons" because it promotes . . . good behavior of inmates and reduces the risk that inmates will be motivated by content involving murder, rape and sexual assault, and/or torture and that they will engage in disruptive criminal actions. This is turn facilitates security.

(Mem. Supp. Mot. Dismiss 12.)

Turning to the first *Turner* factor, there may well be a rational connection between VDOC's policy *generally* (including its criteria) and the purposes defendants identify, and due

7

deference must be given to that rationale.  Stated differently, there may well be a rational connection between promoting the safety, health, and welfare of a prison and a general prohibition on prisoners' possessing books "that emphasize depictions or promotions of violence," (Am. Compl. ¶ 14), including rape, sexual assault, child murder, strangulation, and torture.  It is rational to believe that such a policy promotes good behavior and reduces the risk that inmates will be motivated by such content.  And promotion of good behavior by inmates is clearly a legitimate penological interest.  *See Beard v. Banks*, 548 U.S. 521, 530 (2006) (prison policy prohibiting inmate access to newspapers, magazines, and photographs did not violate the First Amendment because the justification for the policy, to provide an incentive to promote better inmate behavior, satisfied the *Turner* standard).

Here, however, Hulbert alleges several facts that plausibly allege that, as applied to ban this particular book, the policy was unreasonable or arbitrary.  First, he notes that the policy has been inconsistently applied.  In particular, he argues that the book has been available to him and other prisoners in other prison libraries, in addition to books from other fiction crime authors such as James Patterson, Jeffery Deaver, and Dean Koontz, not to mention countless non-fiction "true crime" books with gruesome depictions of death and murder.  (Dkt. No. 40 at 6.)

At least some courts have noted that such an inconsistent application may "undercut the claimed link between the policy and the asserted penological goal." *Prison Legal News v. Stolle*, No. 2:13CV424, 2014 WL 6982470, at *8 n.6 (E.D. Va. Dec. 8, 2014) (citing *Couch v. Jabe,* 737 F. Supp. 2d 561, 569 (W.D. Va. 2010)).  In *Couch,*  the court noted that there were publications prisoners were permitted to possess that plainly violated the prison regulation as stated and thus "the argument by [the defendants] that there is a logical connection between the broad scope of the regulation and their legitimate goals is fundamentally weakened.").  137 F. Supp. 2d at 569.

Here, Hulbert has plausibly alleged an inconsistent application of the policy *as to the very same book*, making even a stronger case.

Second, he plausibly points out facts that might allow a rationale trier of fact to conclude that application of the policy to this particular book is not rational but instead that banning it was an "exaggerated response" to the legitimate penological interest. *Turner*, 482 U.S. 78. In particular, the amended complaint alleges that there are only a few sentences in the entire book discussing the murder of a child so as to possibly implicate Criterion B, and at least according to the passages Hulbert has quoted, there is no suggestion that the book "*contains solicitations for or promotes activities* that are in violation of state or federal law including the abuse . . . of children." (Am. Compl. ¶ 13 (emphasis added).) Similarly, Criterion D itself states: "No publication generally recognized as having literary value should be excluded under this criterion." (*Id.* ¶ 14.) At least insofar as it relates to the passages set forth in the complaint— which Hulbert alleges are the only objectionable ones—the court can envision many materials (including numerous published legal opinions, which presumably VDOC prisoners may access) that contain equally or even more graphic material. And it does not appear that the book is glorifying such conduct. Indeed, as even defendants note, the actions are committed by the *antagonist*.

The court further notes that defendants have not pointed to a case in which an as-applied challenge to a similar book was upheld, either within or outside of the Fourth Circuit.[5] And the court's own research has found that generally, such as-applied challenges fail only where the publication is completely lacking in "literary value" and most often at the summary-judgment stage. *See, e.g.*, *Cline v. Fox*, 266 F. Supp. 2d 489, 497 (N.D.W. Va. 2003) (granting summary

---

[5] Many similar cases involve purely (or largely) photographs or material that is overtly sexual and focused on sex, as opposed to crime novels.

9

judgment for defendants who disallowed so-called "novel" the court described as nearly 200 pages of "graphically described sexual escapades taking place between and amongst a recurring cast of characters, separated only by terse and extremely secondary plot points").  The material here is not so obviously lacking in literary value.[6]

To be sure, the question is not whether defendants were correct in applying the regulation to restrict access to *Full Dark, No Stars*, but whether that conclusion "was rational and therefore entitled to deference."  *Cline v. Fox*, 266 F. Supp. 2d 489, 496 (N.D.W. Va.) (quoting *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 470 (4th Cir. 1999), *abrogated on other grounds by Porter v. Clarke*, 923 F.3d 348, 358 (4th Cir. 2019)).  Nonetheless, at this stage of the case and for the reasons stated, Hulbert has at least plausibly alleged that defendants' application of the policy to prohibit his access to *Full Dark, No Stars* does not satisfy the first *Turner* factor.  As such, the motion to dismiss on this ground will be denied.

## C.  Violation of VDOC Operating Procedure

Defendants also suggest that Hulbert has attempted to state a claim based upon alleged violations of VDOC Operating Procedure, and defendants rely on authority stating that such allegations do not state a § 1983 claim.  *See, e.g.*, *Brown v. Ponce*, No. 3:23cv194, 2025 WL 1384274, at *9 (E.D. Va. May 13, 2025) (explaining that a claim that a defendant "failed to follow VDOC policy or procedure, . . . fails to state a claim of constitutional dimension.  Violations of prison operating procedures do not implicate due process rights and are not cognizable under § 1983.") (citing *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir.

---

[6]  Additionally, although the court does not rely on it in ruling on the motion, it notes that the book won several literary awards in 2011.  *Stephen King*, Science Fiction Awards Database, https://www.sfadb.com/Stephen_King [https://perma.cc/3VW5-7KFC] (last updated Nov. 1, 2025, 11:06 AM) (reflecting it won the Bram Stoker Award and the British Fantasy Award that year).

1990)).  But the court does not interpret his complaint as stating such a claim.  Hulbert is not arguing a mere failure to follow policy, but that VDOC purposefully banned the book and that doing so either follows the policy but violates his First Amendment rights or purposefully violates policy in violation of his First Amendment rights.  The court will not dismiss on that ground.

## D.  Personal Involvement of Defendants

Defendants also argue that Hulbert does not allege sufficient personal involvement by either of them, but the court finds this argument disingenuous.  Hulbert alleged that the book review committee in a certain month kept him from receiving the book, and defendants have acknowledged that they were on that committee at that time.  The court will not require more of plaintiff in this circumstance.  Thus, the court will not dismiss defendants on this ground.[7]

## E.  Monetary Damages Against Defendants in Their Official Capacities

Lastly, defendants seek the dismissal of Hulbert's other requests for relief.  The court agrees with defendant that Hulbert may not obtain money damages against them in their official capacities, so it will grant the motion to dismiss as to that type of damages.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Dale v. FNU Barnes*, 1:23CV373, 2024 WL 4416440, at *3 (M.D.N.C. Oct. 4, 2024) ("It follows that just as 'the Eleventh Amendment bars a damages claim against a state in federal court,' it also bars suit against state officials in their official capacity.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

The other aspects of relief sought by Hulbert are dependent on his success on the merits

---

[7] If it did dismiss for lack of personal involvement, the court would grant leave to amend to add details that could easily overcome any such deficiency.

11

of his claims.  Thus, the court will not grant dismissal of those requests (injunctive and declaratory relief) at this time.

### III.  CONCLUSION

The court will issue an appropriate order granting defendants' motion to dismiss only as to any claim against them in their official capacities for monetary damages.  The motion will otherwise be denied.

Entered: March 30, 2026.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
Chief United States District Judge

12